IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAUTIFUL SLIDES, INC., et al.,<br><br>    Plaintiff,<br><br>  v.<br><br>MAY ALLEN,<br><br>    Defendants. | Case No. 17-cv-01091-MMC<br><br>**ORDER GRANTING COUNTERDEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS; AFFORDING COUNTERCLAIMANT LEAVE TO AMEND**<br><br>Re: Dkt. No. 19 |
| MAY ALLEN,<br><br>    Counterclaimant,<br><br>  v.<br><br>BEAUTIFUL SLIDES, INC., et al.,<br><br>    Counterdefendants. | |

Before the Court is counterdefendants Beautiful Slides, Inc. ("BSI") and Mitch Grasso's ("Grasso") motion, filed May 1, 2017, to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, four of the seven causes of action in counterclaimant May Allen's ("Allen") counterclaim ("Counterclaim"). Allen has filed opposition, to which counterdefendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

On March 2, 2017, counterdefendants filed against Allen a complaint for declaratory relief, alleging Allen had "threatened to commence litigation" against them for

---

[1] By order filed July 14, 2017, the Court took the matter under submission.

1  "copyright infringement, conversion, misappropriation of trade secrets, breach of
2  confidence, breach of contract, and fraud," which counterdefendants denied having
3  committed. (See Complaint ¶ 29.) On April 10, 2017, Allen filed her Counterclaim, which
4  pleading is the subject of the instant motion.

5  In her Counterclaim, Allen alleges that she "works in software design, marketing,
6  and product management," that Grasso "is a software coder by trade," and that Allen and
7  Grasso "worked at VMware together." (See Countercl. ¶¶ 8, 10.)[2] Allen alleges that
8  Grasso, "[o]n or about 2014," talked "to Allen about developing new presentation
9  software," that "Grasso did not have a differentiating idea," and that, "[i]n April 2014,"
10 when Allen "came up with a differentiating idea," she and Grasso "agreed to work
11 together to develop the product and the business around it," which project they referred
12 to as "Beautiful Slides." (See id. ¶¶ 11, 12.) Allen further alleges that, "[i]n the
13 subsequent months," she and Grasso "collaborated on the fundamental design of the
14 application, its user interface, [and] its coloration," and that Allen made various
15 contributions, such as "illustrated mock-ups," marketing ideas, and "feature
16 improvements." (See id. ¶¶ 13-14.)

17 According to Allen, although she and Grasso had "few formal discussions . . .
18 about the nature of their relationship," they "did have a discussion, in June 2014," during
19 which "Allen suggested the parties come to a formal agreement in writing expressing the
20 nature of their partnership," and that "Grasso did not controvert that the [p]arties were
21 partners, nor co-founders in a new joint venture," instead "respond[ing] that a formal
22 codification of [their] relationship was premature and unnecessary because [they] were
23 friends, that there was trust in the relationship, and for that reason Grasso had no intent
24 to 'screw' over Allen." (See id. ¶ 15.) Allen alleges she relied "on these representations
25 in continuing to work with Grasso on the Beautiful Slides project" and that, "[f]rom both

---

[2] As alleged in the complaint and admitted by Allen in her answer, VMware is "a well-known provider of cloud and virtualization software." (See Compl. ¶ 9; Answer ¶ 9.)

2

1   [p]arties perspective[,] there clearly appeared to be a joint desire to work together to
2   develop a new kind of presentation software for a profit." (See id.)

Allen further alleges that, although Grasso was "side-tracked" from June 2014 through March 2016, he "resurfaced" in March 2016, at which point their "joint venture was revived," and Allen "took the lead to take the initial version to the next level" by hiring "beta testers" and giving Grasso "tasks" concerning "changes that needed to be made"; she also "investigated office space" and "consulted" with Grasso as to hiring and whether to sell the intellectual party to a third party who had "expressed interest" in it. (See id. ¶¶ 17-19.)

"By August 2016," Allen alleges, Grasso and Allen were "approaching [their respective] investor contacts" while "Allen continued to develop the business around the product." (See id. ¶¶ 20-21.) At this point, according to Allen, Grasso "cut[] Allen completely out of the deal" by "form[ing] Beautiful Slides, Inc.," (see id. ¶ 23), accepting investments from third parties who "did not know of Allen's existence as a partner in the Beautiful Slides project" (see id.), "assigning "intellectual property to the corporation" (see id. ¶ 29"), and "registering a copyright in a confusing manner," without "any mention of the partnership and/or Allen's authorship and/or other interest in the work," (see id.), after which he "instructed Allen to quit her current job so that she [could] work with him . . . as an 'employee,'" to which Allen "naturally objected" (see id. ¶¶ 24-25).

Based on the above allegations, Allen brings the following seven causes of action: (1) "Breach of Fiduciary Duty (Against Counter-Defendant Grasso)," (2) "Conversion (Against All Counter-Defendants)," (3) "Breach of Implied Contract (Against Counter-Defendant Grasso)," (4) "Fraud by Intentional Misrepresentation and Concealment (Against Counter-Defendant Grasso," (5) "Declaratory Relief Re Copyright Authorship and Validity of Beautiful Slides Application (Against All Counter-Defendants)," (6) "Declaratory Relief Re Copyright Authorship and Validity of Beautiful Slides Animations (Against All Counter-Defendants)," and (7) "Declaratory Relief Re Copyright Authorship and Validity of Beautiful Slides Identity (Against All Counter-Defendants)."

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

Counterdefendants move to dismiss the First through Fourth Causes of Action on the asserted grounds that (1) the First, Second, and Third Causes of Action are preempted by the Copyright Act, (2) the Third Cause of Action fails to adequately allege the terms of an implied contract or any breach thereof, and (3) the Fourth Cause of Action fails to plead fraud with sufficient particularity.

//

**A. Copyright Preemption**

Counterdefendants contend the First through Third Causes of Action, alleging, respectively, breach of fiduciary duty, conversion, and breach of implied contract, are preempted by the Copyright Act because, according to counterdefendants, each such claim is based on "alleged conduct by [Grasso] that deprived Allen of the ability to profit from the copying and use of the software," which ability, counterdefendants contend, is "subsumed within federal copyright law." (See Mot. at 1:4-7 (internal quotation and citation omitted).)

Pursuant to § 301 of the Copyright Act, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright" are "governed exclusively by [the Copyright Act]," and, consequently, "no person is entitled to any such right or equivalent right . . . under the common law or statutes of any State." See 17 U.S.C. § 301(a). Section 301 "establishes a two-part test for preemption": (1) the work at issue "must come within the subject matter of copyright as defined in . . . the Copyright Act"; and (2) "the rights granted under state law must be equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 of the Copyright Act." See Del Madera Prop. v. Rhodes & Gardner, Inc., 820 F.2d 973, 976 (9th Cir. 1987) (internal quotation, citation, and alteration omitted).[3]

Allen does not dispute that the first part of the preemption test, i.e., that the work involved comes "within the subject matter of copyright," see id. (internal quotation and citation omitted), has been met. Allen does argue, however, that the second part of the preemption test, i.e., that the rights granted under state law are "equivalent to any of the exclusive rights within the general scope of copyright," see id. (internal quotation and citation omitted), has not been met.

"To survive preemption, the state cause of action must protect rights which are

---

[3] "Section 106 of the Copyright Act provides a copyright owner with exclusive rights of reproduction, preparation of derivative works, distribution, and display." See Del Madera, 820 F.2d at 977 (citing 17 U.S.C. § 106).

5

1  qualitatively different from the copyright rights" and "must have an 'extra element' which
2  changes the nature of the action." See id. (internal quotation and citation omitted). Here,
3  Allen argues, there is an "extra element" in each of the challenged claims. As to her First
4  Cause of Action, breach of fiduciary duty, Allen contends "California partnership law
5  offers [her] a number of additional protections that the Copyright Act does not" (see Opp.
6  at 4:25-26); as to her Second Cause of Action, conversion, Allen contends she "seeks the
7  return of her share of the business assets regardless of whether these assets are
8  copyrightable or not" (see id. at 5:12-14); and as to her Third Cause of Action, breach of
9  implied contract, Allen contends she has alleged breach of an implied agreement "to work
10 on a startup together—not breach of an agreement restricting use of [her] ideas" (see id.
11 at 5:27-6:1 (internal quotation and emphasis omitted)).

Each of the "extra elements" on which Allen relies, however, is predicated on the existence of a partnership or joint venture, and, as set forth below, the Court finds Allen has not adequately alleged the existence of either relationship.

Under California law, a partnership is defined as "the association of two or more persons to carry on as co-owners a business for profit," see Cal. Corp. Code § 16202(a), and a joint venture is defined as "an undertaking by two or more persons jointly to carry out a single business enterprise for profit," see Weiner v. Fleischman, 54 Cal. 3d 476, 482 (1991) (internal quotation and citation omitted). "From a legal standpoint, both relationships are virtually the same," and either "may be formed orally or assumed to have been organized from a reasonable deduction from the acts and declarations of the parties." See id. at 482-83 (internal quotation and citation omitted).

Here, Allen does not allege an express agreement to enter into a partnership or joint venture, whether oral or written, but, rather, relies on the conduct of the parties. As discussed below, however, the Court finds Allen has not adequately alleged either of the two requisite elements of a partnership or joint venture, namely, an intent to share profits and an intent to jointly manage and control the enterprise.

First, to form a partnership or joint venture, the parties must either explicitly agree

6

to share profits or engage in conduct from which an agreement to do so may be assumed. See Holmes v. Lerner, 74 Cal. App. 442, 457 (1999) (holding, although evidence of "actual sharing of profits" is not required, partnership requires "an understanding to share in profits and losses as any business owners would," which understanding may be derived from "the conduct of the parties"); see also Simmons v. Ware, 213 Cal. App. 4th 1035, 1049 (2013) (holding "[a]greement to share in the profits . . . of the enterprise is . . . essential to a joint venture") (internal quotation and citation omitted). Allen, however, has not alleged an express agreement to share profits, nor has she set forth any facts to support her conclusory allegation that "Grasso had reason to know that Allen would interpret their conduct as an agreement to enter into a contract . . . to share in the profits from the venture." (See Countercl. ¶ 43.) Consequently, Allen has failed to plead the first required element.

Likewise, Allen has failed to plead the second required element. "An essential element of a partnership or joint venture is the right of joint participation in the management and control of the business." See Kaljian v. Menezes, 36 Cal. App. 4th 573, 586 (1995) (internal quotation and citation omitted). Although Allen alleges she and Grasso consulted on various business decisions, such as "who to hire as a potential CTO" and whether to accept a third party's offer (see Countercl. 18-19), she does not allege she had an equal vote in any final management decision. See, e.g., Bank of California v. Connolly, 36 Cal. App. 3d 350, 364 (1973) (finding "essential element of right to joint control was absent" where "court could have reasonably inferred [plaintiffs] were invited to participate in [marketing] decisions, not because they had a voice in management decisions . . . , but because they were expected to provide their skills and services [to the enterprise]"); Fredianelli v. Jenkins, 911 F. Supp. 2d 1001, 1021 (N.D. Cal. 2013) (holding plaintiff failed to show partnership interest in rock group where plaintiff had not shown he "ever had any control in a decision by the [b]and"; noting a decision "made in consultation with [p]laintiff [did] not imply that [p]laintiff had the power

to change the outcome") (internal quotation omitted). [4]

By contrast, in Brown v. Snapchat, No. CV 13-08569, 2014 WL 12573368, (C.D. Cal. Feb. 3, 2014), a case Allen contends contains "facts highly similar" to her own (see Opp. at 3:14), the plaintiff alleged not only that he and the individual defendants expressly agreed "each would have equal say in the control and management of the joint venture/partnership," but further alleged that they, in fact, "voted to make important decisions concerning the [product]." See First Amended Complaint ¶¶ 29, 38, Brown, No. CV 13-08569, 2014 WL 12573368. Here, Allen has alleged neither an express agreement to share control[5] nor an instance in which she and Grasso voted as to an important decision.

Absent adequate allegations as to the existence of a partnership or joint venture, Allen cannot avoid preemption by arguing that her "rights under [California's] partnership and joint venture law" are "broader" than, and therefore "not equivalent to[,] any exclusive rights in the Copyright Act." (See Opp. at 4:1-3 (quoting Brown, 2014 WL 12573368, at *3).

Accordingly, the First through Third Causes of Action will be dismissed with leave to amend.[6]

---

[4] The Court notes that many of the cases concerning joint control involve ongoing businesses, wherein various management decisions have been made and, consequently, the manner in which the plaintiff participated in such decisions can be evaluated, whereas here, at the time Allen alleges the partnership/joint venture was breached, the business had not yet launched. In the few cases finding a joint venture where the business was not yet established, the plaintiff had alleged an express oral agreement as to joint control. See, e.g., Second Measure, Inc. v. Kim, 143 F. Supp. 3d 961, 964, 972 (N.D. Cal. 2015) (finding partnership/joint venture adequately pleaded where company incorporated after plaintiff's role "ended" but plaintiff alleged parties had "agreed to have equal say in the control of the management").

[5] Indeed, the only agreement reflected in the pleadings is a prior employment relationship. (See Compl. ¶ 9 (alleging Grasso "founded . . . SlideRocket," which he later "sold to VMWare," and, "[w]hile working at SlideRocket, Grasso hired Allen as an entry-level quality assurance contractor"); Answer ¶ 9 (admitting Grasso "co-founded SlideRocket," which "was sold to VMWare," and that Allen "was hired by SlideRocket as an entry-level quality assurance contractor").)

[6] If Allen chooses to amend to plead additional facts in support of a partnership or joint venture, she also should specify the "non-copyrightable partnership property" she

8

**B. Failure to Allege Terms and Breach of Implied Contract**

Counterdefendants argue the Third Cause of Action, breach of implied contract, is subject to dismissal on the additional ground that "Allen does not allege sufficient facts to give rise to an implied contract, or conduct amounting to a breach of the agreement." (See Mot. at 11:10-11.)

Under California law, "[a]n implied contract is one, the existence and terms of which are manifested by conduct." See Cal. Civ. Code § 1621. Here, as set forth above, Allen alleges "Grasso had reason to know that [she] would interpret their conduct as an agreement to enter into a contract, namely, to share in the profits from the venture" (see Countercl. ¶ 43), but has not alleged a course of conduct from which any such agreement may be implied.[7]

Accordingly, the Third Cause of Action will be dismissed with leave to amend.

**C. Failure to Plead Fraud with Sufficient Particularity**

Counterdefendants argue the Fourth Cause of Action, fraud, is subject to dismissal for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party "alleging fraud or mistake . . . state with particularity the circumstances constituting fraud or mistake." See Fed. R. Civ. P. 9(b).

Under California law, fraud can take the form of a knowing, affirmative misrepresentation, a suppression of a fact, or a promise, made without intention of performing it. See Cal. Civ. Code § 1710. Here, although the Fourth Cause of Action is titled "Fraud by Intentional Misrepresentation and Concealment," the Court finds Allen fails to plead either form of fraud in compliance with Rule 9(b).

---

contends forms the basis of her conversion claim. (See Opp. at 5:18.)

[7] The Court is not persuaded, however, to the extent counterdefendants contend that, even if Allen had sufficiently pleaded an implied contract, she has failed to allege a breach because, according to counterdefendants, she has not alleged Grasso's company "actually sold any products or services, much less that [it] earned a profit doing so." (See Mot. at 11:3-6.) As Allen points out, she alleges Grasso took "for himself all profits and compensation that would have gone to [Allen]" (see Countercl. ¶ 9), which, read in the light most favorable to Allen, the Court understands to allege profits were in fact earned.

9

First, Allen fails to plead a misrepresentation. As counterdefendants correctly point out, Allen does not set forth the "specific content" of any representation on which she relies, see Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (holding Rule 9(b) "requires . . .an account of the time, place, and specific content of the false representations"), or why any such representation was false at the time it was made, see U.S. v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (holding Rule 9(b) requires allegation specifying "what is false or misleading about a statement, and why it is false").

Second, Allen fails to plead fraudulent concealment. Allen alleges Grasso "intentionally failed to disclose certain facts to Allen, namely, that if and when the product and business they were jointly developing became profitable, he intended to cut Allen out as a founder." (See Countercl. ¶ 50.) Under California law, however, nondisclosure or concealment is only actionable where the "defendant is in a fiduciary relationship with the plaintiff" or there is "some other relationship" or "transaction" between the parties "which gives rise to a duty to disclose," such as "seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of [a] contractual agreement." See Hoffman v. 162 N. Wolfe LLC, 228 Cal. App. 4th 1178, 1186-87 (2014) (internal quotation and citation omitted). Here, as set forth above, Allen has not adequately alleged a fiduciary relationship or contractual agreement with Grasso, and she has not alleged any other relationship that would give rise to a duty to disclose.

Next, although not encompassed in its title or text, to the extent Allen bases her Fourth Cause of Action on a theory that Grasso's statement in 2014 that he "had no intent to 'screw [her] over'" (see Countercl. ¶ 15) constituted a promise without intent to perform, such claim likewise fails. Even assuming, arguendo, such statement can be construed as a potentially actionable promise, Allen, as counterdefendants point out, appears to allege that Grasso did not form the intent to "cut [her] out" until two years later, in "2016" (see id. ¶¶ 21-22); see also Magpali v. Farmers Group, Inc., 48 Cal. App. 4th 471, 481 (1996) (holding "promise of future conduct is actionable as fraud only if made

10

without a <u>present</u> intent to perform") (emphasis added).

Lastly, a party bringing a fraud claim must allege "actual and justifiable reliance" on the alleged fraudulent conduct. See <u>Beckwith v. Dahl</u>, 205 Cal. App. 4th 1039, 1062 (2012). Here, Allen's allegation that she "reasonably would have behaved differently" if "the omitted information had been disclosed" (<u>see</u> Countercl. ¶ 54) does not allege reliance with the "requisite specificity." See <u>Beckwith</u>, 205 Cal. App. 4th at 1063; <u>see also</u> <u>id</u>. at 1062 (holding "the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused him to take a detrimental course of action"). Nor can Allen rely on her assertion, in her opposition, that "she would have either insisted on formalizing the parties' relationship in writing, refused to contribute further to the project, and/or develop[ed] her own project" (<u>see</u> Opp. at 11:13), as she has made no such allegation in her Counterclaim.

Accordingly, the Fourth Cause of Action will be dismissed with leave to amend.

**CONCLUSION**

For the reasons set forth above, counterdefendants' motion to dismiss is hereby GRANTED, and the First through Fourth Causes of Action in Allen's Counterclaim are hereby DISMISSED. If Allen wishes to amend her Counterclaim to cure the above-noted deficiencies, she shall file her First Amended Counterclaim no later than September 20, 2017. In the event Allen does not wish to amend within the time provided, the Counterclaim will proceed only as to the Fifth, Sixth, and Seventh Causes of Action.

**IT IS SO ORDERED.**

Dated: August 31, 2017

MAXINE M. CHESNEY
United States District Judge