WOOD ROBBINS, LLP
Gregory J. Wood (200780)
gwood@woodrobbins.com
B. Douglas Robbins (219413)
drobbins@woodrobbins.com
Kristen E. Drake (202827)
kdrake@woodrobbins.com
One Post Street, Suite 800
San Francisco, CA 94104
T: (415) 247-7900
F: (415) 247-7901

Attorneys for Defendant and Counterclaimant
MAY ALLEN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAUTIFUL SLIDES, INC., a Delaware corporation; and MITCH GRASSO, an individual, | Case No.: 3:17-cv-01091-MMC |
| Plaintiffs, | **MAY ALLEN'S OPPOSITION TO MOTION TO DISMISS THE FIRST THROUGH FOURTH CAUSES OF ACTION IN AMENDED COUNTERCLAIM** |
| v. | |
| MAY ALLEN, an individual, | Hearing: November 17, 2017 |
| Defendant. | Time: 9:00 a.m. |
| | Dept.: 7 |
| AND RELATED CROSS-ACTION. | Judge: Hon. Maxine M. Chesney |

# TABLE OF CONTENT

**Pg**

I.   STATEMENT OF ISSUES ..................................................................1

II.  STATEMENT OF FACTS ..................................................................1

III. ARGUMENT .......................................................................................1

   A.   Legal Standard.......................................................................... 2

   B.   Allen Has Sufficiently Pled The Existence of a
        Partnership or Joint Venture .................................................. 2

        1.   Whether a Partnership Was Formed is a
             Question of Fact for the Jury and Should
             Not Be Considered on a 12(b)(6) Motion. ...................... 2

        2.   Under California Law, the Parties' Agreement
             OR Conduct Will Give Rise to a Partnership,
             Even If The Parties Did Not Intend to Form
             a Partnership. ................................................................ 3

        3.   Because a Partnership Can Be Found by
             Agreement OR Conduct, All That Must Be
             Alleged is an Agreement, or, Conduct From
             Which a Partnership May Be Inferred............................. 3

        4.   Allen Alleges an Agreement to Form a
             Partnership, AND, Conduct From Which a
             Partnership May Be Inferred. ......................................... 4

             a.   Management and Control...................................... 4
             b.   Sharing of Profits................................................ 6
             c.   Additional Surrounding Circumstances
                  from Which a Partnership May Be Inferred............7

        5.   Counter-Defendants' Cases are in Accord, and
             Support the Court Denying the Motion to Dismiss. ........ 8

   C.   Allen's Causes of Action Are Not Preempted by
        the Copyright Act .................................................................. 10

        1.   Allen's First Cause of Action for Breach of
             Fiduciary Duty is Not Preempted by the
             Copyright Act ............................................................... 10

        2.   Allen's Second Cause of Action for Conversion
             is Not Preempted by the Copyright Act......................... 10

             a.   Conversion, Generally...................................... 10
             b.   Allen's Conversion Claim Does Not Fall
                  Within The Scope of The Copyright Act. ........... 11
             c.   Allen Sufficiently Alleges the Non-
                  Copyrightable Asset Converted ........................ 12
             d.   Counter-Defendants' Cases are in Accord,
                  and Support the Court Denying the
                  Motion to Dismiss............................................. 13

   D.   Allen's Breach of Implied Contract Cause of
        Action is Not Preempted and Is Adequately
        Pled........................................................................................ 13

i

**E.    Allen Has Pled Fraud with Particularity** ................................................. **15**
    *1.    Fraud, Generally* ................................................................. 15
    *2.    Pleading Fraud Under Rule 9 Required
    Only the Date and Content of the Repre-
    sentation Where Known* .................................................. 16
    *3.    Allegation of Intent Do Not Have To Be
    Pleaded With Specificity* ................................................ 17
    *4.    Allen Has Alleged Justifiable Reliance* ......................... 18

**IV.    CONCLUSION** .................................................................................... **18**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Aschroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................2

5

*Auditorium Co. v. Barsotti*,
6   40 Cal. App. 592 (1919) ...................................................................................7

7

*Bank of California v. Connolly*,
   36 Cal. App. 3d 350 (1973) ..............................................................................2
8

9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................2

10

*Billups v. Tiernan*,
11   11 Cal. App. 3d 372 (1970) ..............................................................................3

12

*Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Inc.*,
   688 F. Supp. 2d 940 (N.D. Cal. 2010) ...........................................................13
13

14

*Brown v. Snapchat, Inc.*,
   No. CV1308569RGKAGRX, 2014 WL 12573368 (C.D. Cal. Feb. 3,
15   2014) ..............................................................................................................11

16

*Celebrity Chefs Tour, LLC v. Promark Prods., LLC*,
   No. 13-CV-2714, 2015 WL 11237460 (S.D. Cal. Aug. 10, 2015) ....................5
17

18

*Doll v. Stars Holding Co.*,
   No. C-05-1132, 2005 WL 2811767 (N.D. Cal. Oct. 27, 2005) .......................17

19

*Doug's Coin & Jewelry, Inc. v. Amm.'s Value Channel, Inc.*,
20   No. 2:12-cv-01095, 2015 WL 3632228 * 15 (N.D. Ala. Jun. 10, 2015) ...........5

21

*Fredianelli v. Jenkins*,
   931 F. Supp. 2d 1001 (N.D. Cal. 2013) ...........................................................5
22

23

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
   148 Cal. App. 4th 97 (2007) ......................................................................11, 12

24

*Holmes v. Lerner*,
25   74 Cal. App. 4th 442 (1999) .............................................................................7

26

*Landucci v. State Farm Insurance Company*,
   65 F. Supp. 3d 694, 713-714 (N.D. Cal. 2014) ..............................................15

27

28

iii

*In re Lona*,
    393 B.R. 1 (Bankr. N.D. Cal. 2008) ...............................................................8

*Love v. Mail on Sunday*,
    489 F. Supp. 2d 1100 (2007) ...........................................................................9

*Love v. Mail on Sunday*,
    No. CV057798ABCPJWX, 2006 WL 4046181 (C.D. Cal. Nov. 16,
    2006) .................................................................................................................9

*McKay v. Hageseth*,
    No. C-06-1377, 2007 WL 2669934 (N.D. Cal. Sept. 7, 2007).......................9

*Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No.*
    *427 v. Philco-Ford Corp.*,
    661 F.2d 776, 782 (9th Cir. 1981).................................................................16

*Mohebbi v. Khazen*,
    50 F. Supp. 3d 1234, 1256 (N.D. Cal. 2014) ...............................................17

*Moreno v. SFX Entertainment, Inc.*,
    *No.* CV-14-0880-RSWL-CWX, 2015 WL 4573226 (C.D. Cal. July 29,
    2015) ...............................................................................................................15

*MP Nexlevel of Cal., Inc. v. CVIN, LLC*,
    No. 1:14-CV-288, 2014 WL 5019639 (E.D. Cal. Oct. 7, 2014) ..............8, 9

*Nelson v. Abraham*,
    29 Cal. 2d 745 (1947) ......................................................................................3

*Petro-Diamond Inc. v. SCB & Assocs., LLC*,
    No. 12-01893-CJC, 2014 WL 12597502 (C.D. Cal. Jul. 3, 2014) ..............5

*Ramirez v. Sotelo*,
    No. EDCV1302155SJOMRWX, 2014 WL 12586445 (C.D. Cal. May 8,
    2014) ............................................................................................................2, 4

*Roberts v. Gainsforth*,
    No. CV1407595ABVBKX, 2015 WL 12765021 (C.D. Cal. Apr. 28,
    2015) ...............................................................................................................17

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*,
    965 F. Supp. 2d 1141 (E.D. Cal., 2013) ............................................. *passim*

*Second Measure, Inc. v. Kim*,
    143 F. Supp. 3d 961, 968-969 (N.D. Cal., Nov. 10, 2015).................. *passim*

*Universal Sales Corp. v. Cal. Etc. Mfg., Co*,
    20 Cal. 2d 751 (1942).......................................................................................7

iv

*Weiner v. Fleischman*,
   54 Cal. 3d 476 (1991) ............................................................................................2, 3

**Statutes**

17 U.S.C. § 106 ............................................................................................................11

17 U.S.C. § 201(a) ........................................................................................................11

17 U.S.C. § 504(a)-(b) ..................................................................................................11

Cal. Corp. Code §16101(10) ..........................................................................................3

Cal. Corp. Code §16202(a) ............................................................................................7

Cal. Corp. Code §16401 ..............................................................................................12

Cal. Corp. Code §16404 ..............................................................................................10

Cal. Corp. Code § 16807 .............................................................................................12

Fed. R. Civ. P. Rule 8 ..........................................................................................2, 9, 14

Fed. R. Civ. P. 8(A)(2) ...................................................................................................2

Fed. R. Civ. P. Rule 9 ...........................................................................................16, 17

Fed. R. Civ. P. Rule 9(b) .............................................................................................17

Fed. R. Civ. P. Rule 12(b)(6) .........................................................................................2

v

Defendant and Counterclaimant May Allen ("Allen") hereby opposes Plaintiff and Counter-Defendants Beautiful Slides, Inc. and Mitch Grasso's (collectively, "Counter-Defendants") Motion to Dismiss the First Through Fourth Causes of Action in Allen's Amended Counterclaim.

## I.    STATEMENT OF ISSUES

Per Civ. L.R. 7-4(3), the issues to be decided are: (1) whether Allen has sufficiently pled the existence of a partnership for purposes of the First and Second Causes of Action for Breach of Fiduciary Duty and Conversion; (2) whether Allen's Conversion, Breach of Fiduciary Duty, and Breach of Implied Contract causes of action are preempted by the Copyright Act; (3) whether Allen's Breach of Implied Contract cause of action is adequately pled; and (4) whether Fraud was pled with the requisite particularity.

## II.    STATEMENT OF FACTS

The Court is aware of the facts and procedural history at this point. In short, Counter-Defendant Mitch Grasso ("Grasso") and Allen collaborated on a project together, as partners, for over two years and then, when investors expressed an interest, Grasso created a corporation and took all investment, cutting Allen out of the deal entirely. Grasso holds shares worth about $10 million. Because Grasso cut Allen out of the deal, Allen has absolutely nothing.

## III.    ARGUMENT

Counter-Defendants and their lawyers think cutting Allen out completely, despite her contributions, is fair and appropriate. They are fighting tooth and nail to keep Allen telling her story to a jury and being awarded what she is due, which is at minimum half of what Grasso received in equity and compensation.

Neither the equities, nor the law, are on Counter-Defendants' side in this case. Indeed, California law squarely favors Allen's position. Certainly, nothing in Federal procedural law suggests the Court should be kicking Allen out at the pleading stage.

///

1

## A.     Legal Standard

Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is [plausibly] entitled to relief." Fed. R. Civ. P. 8(A)(2); see *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (setting forth the plausibility standard). Plausibility does not require a probability of success on the merits; instead it requires "more than a sheer possibility" of success on the merits. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint contains a statement showing that the pleader is plausibly entitled to relief, the court first identifies the elements of the plaintiff's claim and then determines whether those elements can be proved on the alleged facts. *Id.* at 663. When conducting this analysis, the court accepts the alleged factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Id.*

## B.     Allen Has Sufficiently Pled The Existence of a Partnership or Joint Venture

### 1.     *Whether a Partnership Was Formed is a Question of Fact for the Jury and Should Not Be Considered on a 12(b)(6) Motion.*

"The existence of a partnership or joint venture is a question of fact determined by a preponderance of the evidence." *Ramirez v. Sotelo*, No. EDCV1302155SJOMRWX, 2014 WL 12586445, at *3 (C.D. Cal. May 8, 2014); *see also Weiner v. Fleischman*, 54 Cal. 3d 476, 490 (1991), *Sacramento E.D.M., Inc*. v. Hynes *Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1150 (E.D. Cal. 2013); *Bank of California v. Connolly*, 36 Cal. App. 3d 350, 364 (1973) ("Whether a partnership or joint venture exists is primarily a factual question to be determined by the trier of fact from the evidence and inferences to be drawn therefrom.")

Because the question whether a joint venture or partnership was formed is a "fact-specific inquiry that requires development of the record," it is not appropriate for the Court to address that question on a motion under Rule 12(b)(6). *See e.g., Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 968-969 (N.D. Cal., Nov. 10, 2015); *Sacramento E.D.M., Inc.*, 965 F. Supp. 2d at 1150 ("by pleading that a partnership

2

existed, Plaintiffs have sufficiently alleged that Defendants owed a fiduciary duty to Plaintiffs…").

   2.   *Under California Law, the Parties' Agreement OR Conduct Will Give Rise to a Partnership, Even If The Parties Did Not Intend to Form a Partnership.*

   "California law defines a partnership as 'the association of two or more persons to carry on as co-owners a business for profit . . . whether or not the persons intend to form a partnership.'" *Second Measure*, 143 F. Sup. 3d at 971 (citing Cal. Corp. Code §16202(a)). "Similarly, a joint venture is 'an undertaking by two or more persons jointly to carry out a single business enterprise for profit.'" *Id.*, *citing Weiner*, 54 Cal. 3d at 482. "Either relationship may be formed orally." *Id*; *see also* Cal. Corp. Code §16101(10) ("'Partnership agreement' means the agreement, whether written, oral, or implied, among the partners concerning the partnership…").

   "No particular formalities are required to create a partnership, and whether a partnership has been created may be inferred from the parties' conduct." *Sacramento E.D.M., Inc.*, 965 F. Supp. 2d at 1150, *see also, Weiner*, 54 Cal. 3d at 482-83 ("A joint venture or partnership may be formed orally or assumed to have been organized from a reasonable deduction from the acts and declarations of the parties.") "Whether or not the parties have entered into a partnership relationship generally depends on whether they intended to share in the profits, losses and the management and control of the enterprise." *Sacramento E.D.M., Inc.*, 965 F. Supp. 2d at 1150. *See, e.g., Nelson v. Abraham*, 29 Cal. 2d 745, 750 (1947) (profit sharing is a factor in determining whether a partnership exists); *Billups v. Tiernan*, 11 Cal. App. 3d 372, 379 (1970) (some degree of participation in management and control of business is an element of partnership).

   3.   *Because a Partnership Can Be Found by Agreement OR Conduct, All That Must Be Alleged is an Agreement, or, Conduct From Which a Partnership May Be Inferred.*

   It is sufficient to plead the parties orally agreed to form a partnership. *See Sacramento E.D.M., Inc.*, 965 F. Supp. 2d at 1150. It is also sufficient to plead conduct

3

1   from which a partnership can be inferred: "to adequately plead the existence of an

2   implied partnership or joint venture agreement, a plaintiff need only allege conduct and

3   circumstances from which an intention to operate a business as co-owners and share

4   management responsibilities may be inferred, regardless of whether the parties

5   intended to form a partnership." *Second Measure*, 143 F. Supp. at 978. "It is immaterial

6   if the parties do not designate their relationship as a partnership or if they do not know

7   that they are partners, for intent may be implied from their acts." *Ramirez v. Sotelo*,

8   2014 WL 12586445, at *3. "A primary element in deciding whether a party asserting

9   partnership is a copartner is his or her participation in management and control of the

10  business." *Id.*

11          4.      *Allen Alleges an Agreement to Form a Partnership, AND, Conduct*
                    *From Which a Partnership May Be Inferred.*
12

13          Allen alleges that on April 16, 2014, Grasso and Allen jointly agreed to carry on,

14  as co-owners, a business for profit and proceeded to do just that by collaborating for 2.5

15  years. Amended Counterclaim at ¶¶ 11, 50, 52, 53.

16                  a.      Management and Control

17          In addition, Allen alleges that Allen and Grasso expressly agreed on a division of

18  business management and control based on their respective talents. *Id.* at ¶ 14; *see*

19  *also Second Measure*, 143 F. Supp. 3d 961, 972 ("Kim alleges that they agreed on a

20  division of business responsibilities."). Later, Grasso also "assumed management and

21  control of investor communications and further strategic planning for the partnership," to

22  which Allen consented. *Id.* at ¶¶ 26, 29.

23          Pursuant to the parties' respective division of management responsibilities, Allen

24  proceeded to contribute hundreds of hours of work on Software design and Software

25  and company positioning, for no compensation, on the expectation that she would

26  ultimately share in the profit. *See e.g.,* Amended Counterclaim at ¶¶ 15, 18, 21, 22, 23,

27  26, 27, 28, 29, 50, 51. "[T]hese allegations are sufficient to plead that [Allen and Grasso]

28  formed a joint venture or partnership by their express oral agreement and subsequent

4

1    collaboration." *Second Measure*, 143 F. Supp. 3d at 972.

2        Counter-Defendants argue that Grasso and Allen's division of labor according to

3    their skill and capability does not satisfy the management and control requirement.

4    Motion 12:16-18. But this argument is contrary to the express holding of *Second*

5    *Measure*, where allegations that the parties "agreed on a division of business

6    responsibilities," and "an equal say in the control of the management of the joint

7    venture/partnership" were not conclusory and were in fact sufficient to defeat a 12(b)(6)

8    Motion. *Second Measure*, 143 F. Supp. 3d at 972, *see also Sacramento E.D.M.*, 965 F.

9    Supp. 2d at 1140 (finding the allegations "sufficient to plead the existence of a

10   partnership" under California law, where the plaintiff alleged the defendant had orally

11   agreed to conduct business together, share profits, provide operating capital, and

12   assume some control over the business).

13       Counter-Defendants' reliance on the cases they cite is unpersuasive. First, the

14   first three cases cited by Counter-Defendants, *Petro-Diamond, Fredianelli*, and *Doug's*

15   *Coin & Jewelry*, are summary judgment, not 12(b)(6) cases. *Petro-Diamond Inc. v. SCB*

16   *& Assocs., LLC*, No. 12-01893-CJC,, 2014 WL 12597502, *1-2 (C.D. Cal. Jul. 3, 2014)

17   (*Petro-Diamond* failed to raise a triable issue of material fact with respect to whether

18   there was "a right to control a joint business."); *Fredianelli v. Jenkins*, 931 F. Supp. 2d

19   1001, 1020 (N.D. Cal. 2013) (the undisputed evidence showed that Defendant "had the

20   final say as to all creative and business decisions of the Band."); *Doug's Coin &*

21   *Jewelry, Inc. v. Amm.'s Value Channel, Inc.*, No. 2:12-cv-01095, 2015 WL 3632228, *

22   15 (N.D. Ala. Jun. 10, 2015) (Plaintiff failed to meet its burden of "establishing Binns and

23   AVC functioned as co-owners").

24       Second, the fourth case relied on by Defendants is entirely inapposite. In

25   *Celebrity Chefs Tour, LLC v. Promark Prods., LLC*, No. 13-CV-2714, 2015 WL

26   11237460, *8 (S.D. Cal. Aug. 10, 2015), the court simply observed that there was no

27   indication that Macy's or Whirlpool were in a partnership with an ownership interest in

28   "Macy's Great American Chef's Tour [GACT]" where Plaintiff also alleged that Plaintiff

5

alone owned all of the rights to GACT." *Id.* Those are not the facts here. To the contrary, Allen has sufficiently alleged that she had the right to, and did control and manage the Software's design and Software and company positioning, while Grasso managed coding with Allen's help. These allegations are sufficient under *Second Measure* and *Sacramento E.D.M.* to defeat this Motion. The allegations that Grasso took over control later in time do not defeat a finding of a partnership, only support a finding of breach.

b.    Sharing of Profits

Allen has also alleged conduct throughout the parties' relationship from which an agreement to share in the business's eventual profits can be inferred. For example, Allen alleges that on June 9, 2014, Allen and Grasso met at a Starbucks to discuss company structure and funding. Amended Counterclaim at ¶ 19. During that discussion, Allen suggested that she and Grasso formalize their partnership in writing. *Id.* at ¶ 20. Grasso did not refute the existence of a partnership, but instead said that the writing was not required because the two were friends and he would not "screw [her] over." *Id.* Allen relied on his representations, and continued to work as a partner, without compensation, and "with the expectation of sharing profits" with Grasso. *Id.*

Throughout their work together, Grasso continued to make representations and act in a way that lead Allen to believe that the two were partners who would share profits from their work together. *Id.* at ¶ 31. For example, in July 2017, Grasso was concerned about Allen's time commitments. *Id.* at ¶ 32. But because Allen had not been receiving compensation for her time, Grasso's conduct showed typical partner anxiety; he wanted to make sure that Allen was pulling her weight because the two would share profits down the road. *Id.* at ¶ 33. Finally, in a written correspondence, Grasso expressly acknowledged that Allen would receive equity in the company, albeit disputing how much. *Id.* at ¶¶ 41, 43. These allegations suffice to defeat the present Motion.

It should also be noted, however, under California law, the agreement to share profits is evidence of, but not a necessary element of a partnership. In *Second Measure*, defendant argued that plaintiff's pleading was deficient because plaintiff had not alleged

6

1   "co-ownership of property, sharing of gross returns, and sharing of business profits."

2   *Second Measure*, 143 F. Supp. 3d at 972. The court dismissed this argument, noting

3   that "[t]he presence or absence of any of these indicia is not dispositive as to whether a

4   joint venture or partnership was actually formed. . . Instead, the existence of a joint

5   venture or partnership depends on the overall set of facts and circumstances about the

6   business relationship." *Id.* (emphasis added); see also *Holmes v. Lerner*, 74 Cal. App.

7   4th 442, 454 (1999) (profit sharing is only "evidence of a partnership, rather than a

8   required element of the definition of a partnership"); *Auditorium Co. v. Barsotti*, 40 Cal.

9   App. 592, 596 (1919) (the distinguishing feature of partnership is association to carry on

10  business together, not agreement to share profits); *Universal Sales Corp. v. Cal. Etc.*

11  *Mfg., Co*, 20 Cal. 2d 751, 764 (1942) (mode of participating in profits may be left to the

12  agreement of the parties). Thus, "the presence or absence of any of the various

13  elements . . ., including sharing of profits and losses, is not necessarily dispositive." *Id.*,

14  *see also Holmes*, 74 Cal. App. 4th at 454. Instead, "the existence of a joint venture or

15  partnership depends on whether [Plaintiff and Defendant] intended to 'carry on as co-

16  owners a business for profit,' which is revealed through their agreements, conduct, and

17  surrounding circumstances." *Second Measure,* 143 F. Supp. 3d at 979, *see also*, Cal.

18  Corp. Code §16202(a); *Holmes*, 74 Cal. App. 4th at 454. Much like in *Second Measure,*

19  *Inc.*, the Amended Counterclaim "alleges sufficient agreements, conduct, and

20  circumstances from which it may be inferred that [Allen and Grasso] intended to operate

21  a business as co-owners." *Id.*

22              c.      Additional Surrounding Circumstances from Which a
                        Partnership May Be Inferred
23

24          Additional surrounding circumstances from which a partnership between Allen

25  and Grasso can be inferred include: (1) numerous e-mail exchanges between Allen and

26  Grasso, affirming the existence of a partnership between the two through Grasso's use

27  of the word, "we;" (*see e.g.,* Amended Counterclaim at ¶¶ 16, 17, 22, 34, 35, 38); (2)

28  Grasso's failure to ever controvert or otherwise challenge Allen's statements that the

7

two were partners and/or co-founders in a new joint venture (*see e.g.*, *Id.* at ¶ 20); (3) Grasso and Allen's key decision making related to the best domain name, name for their company, the hiring of a CTO and other employees, and suitable office space (*see e.g.*, *Id.* at ¶ 28); and (4) Grasso's affirmation  in a writing to a prospective investor that Grasso and Allen were working on a new startup together, as partners (*see e.g.*, *Id.* at 37). The existence of a partnership can be inferred from these additional surrounding circumstances.

By way of example, in *In re Lona*, the court made a factual finding that a partnership existed, based on three letters wherein the parties used the word "we,"

> Each letter referred to Lona and Turi as "we" multiple times - a fact Turi admitted at trial. Turi testified that he included Lona in the letter because she was "integral" to the success of the business. However, he later contradicted this testimony when stated that the assistance of his other employees was also crucial. … Turi's consistent use of the first person plural when asking Abreu for assistance indicates that Lona and Turi were partners who wanted to find a way to continue their business. … Turi and Lona's denial that there was a partnership is of little consequence. . . . Second, the existence of a partnership is not determined by the parties' designation of their arrangement. . . . Instead, it depends primarily upon the intention of the parties ascertained from the terms of any agreement, from the parties' acts and from the surrounding circumstances as a whole. . . . Here, Turi and Lona's claims that there was no partnership are belied by their words, their actions and by a substantial amount of documentary proof.

*In re Lona*, 393 B.R. 1, 15-16 (Bankr. N.D. Cal. 2008).

> *5.* *Counter-Defendants' Cases are in Accord, and Support the Court Denying the Motion to Dismiss.*

Counter-Defendants rely on *MP Nexlevel of Cal., Inc.* for the proposition that "Allen's mere, alleged performance of work does not show that she had the right to share equally in any profits resulting from the Software." Motion 9:19-21. However, Allen does not just allege that she worked on the project. She alleges many facts that give rise to a partnership, including the fact that Grasso was vague about it. Likewise, while the *MP Nexlevel* Court held while there was no "authority holding that two parties jointly applying for and receiving federal grant funding, in and of itself, evinces a legal partnership," or that "a collaboration between two parties to jointly build a project, in and

MAY ALLEN'S OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIM
CASE NO.: 3:17-cv-01091-MMC

1  of itself, evinces a legal partnership," the Court expressly noted that its analysis would

2  be different if "one or both of them failed to clarify the nature of their relationship." *MP*

3  *Nexlevel of Cal., Inc. v. CVIN, LLC*, No. 1:14-CV-288, 2014 WL 5019639, * 8 and fn. 8

4  (E.D. Cal. Oct. 7, 2014). *See e.g.,* Amended Counterclaim ¶¶ 16, 17, 20.

5          Counter-Defendants cite *McKay v. Hageseth*, No. C-06-1377, 2007 WL 2669934,

6  *5 (N.D. Cal. Sept. 7, 2007) for the same proposition. But *McKay* does not stand for that

7  proposition. *McKay* is a summary judgment, not a 12(b)(6) case, in which the

8  defendants argued that there was "no evidence to prove the existence of a joint

9  venture" between them and co-defendant JRB. *Id.* at *5. The Court agreed. Conversely,

10 this case is at the pleading stage. The existence of a partnership will be supported by

11 the evidence when it is presented, distinguishing this case from *McKay*.

12         Cross-Defendants similarly cite to a case called *Love v. Mail on Sunday*, 489 F.

13 Supp. 2d 1100 (2007) for the proposition that though Grasso's use of "we" "vaguely

14 suggested an intent to collaborate, it cannot reasonably be interpreted as a guarantee

15 that Allen would equally share any profits resulting from the Software." Motion 10:6-19.

16 Of course, Allen is not saying that the use of "we" in and of itself guaranteed anything;

17 instead, she is outlining the overall set of circumstances from which a partnership can

18 be inferred, Grasso's use of the word "we," repeatedly, among them. And in any event,

19 *Love* has no relevance here. *Love* was a summary judgment case, where the evidence

20 showed there was no partnership between Plaintiff and Defendant who were instead

21 simply entitled to royalties for co-writing songs. *Id.* at 1106. The Court held that the right

22 to royalties, without more, did not establish the existence of a partnership. *Id.*

23         Intestingly, however, Counter-Defendants fail to mention that before the court

24 made the above determination in *Love* at the summary judgment stage, the court first

25 denied defendants' 12(b)(6) motion to dismiss Plaintiff's Second Amended Complaint.

26 *See Love v. Mail on Sunday*, No. CV057798ABCPJWX, 2006 WL 4046181, at *1 (C.D.

27 Cal. Nov. 16, 2006). In so doing, the court noted, "[t]he Rule 8 standard contains a

28 powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 2

(internal citations omitted). "Plaintiff's allegations that a [songwriting] partnership existed are sufficient to trigger litigation of that question in this matter… Whether the alleged partnership was terminated, and whether the allegedly breached duties were also terminated, cannot be resolved at this time in a motion to dismiss." *Id.* at 4.

### C.    Allen's Causes of Action Are Not Preempted by the Copyright Act

#### 1.    Allen's First Cause of Action for Breach of Fiduciary Duty is Not Preempted by the Copyright Act

Counter-Defendants argue that Allen's breach of fiduciary duty cause of action should be dismissed because she has not pled the existence of a partnership. Motion 18:1-5. As set forth above, the argument is baseless. "By statute, a fiduciary relationship exists among partners in a business partnership." *Sacramento E.D.M., Inc.*, 965 F. Supp. 2d at 1150, *see also* Cal. Corp. Code § 16404. Allen has adequately pled that a partnership and/or joint venture existed. *Sacramento E.D.M., Inc.*, 965 F. Supp. 2d at 1150. "[B]y pleading that a partnership existed, Plaintiffs have sufficiently alleged that Defendants owed a fiduciary duty to Plaintiffs and breached that duty by engaging in numerous acts of self-dealing" *Id.* "Accordingly, Defendants' motion to dismiss with respect to Plaintiff's [breach of fiduciary duty cause of action]" should be "denied." *Id.*

#### 2.    Allen's Second Cause of Action for Conversion is Not Preempted by the Copyright Act

One of the amendments made by Allen in the Amended Counterclaim was to make clear that the Conversion cause of action only relates to "non-copyrightable" assets. Amended Counterclaim at ¶ 61 and 62. It is against this backdrop that we analyze Counter-Defendant's renewed Motion to dismiss this claim, again on pre-emption grounds.

##### a.    Conversion, Generally

"Under California law conversion refers to 'an actual interference with [the plaintiff'] ownership or right of possession." *Second Measure*, 143 F. Supp. 3d at 980. "To establish a claim of conversion, the plaintiff must show '(1) the plaintiff's ownership

---

10

1    or right to possession of the property; (2) the defendant's conversion by wrongful act

2    inconsistent with the property rights of the plaintiff; and (3) damages." *Id.*

3         "One partner can be liable to another for conversion of partnership property." *Id.*

4    "Further, intangible property such as corporate shares and bonds may be the proper

5    subject of a conversion claim." *Id*; *see also Fremont Indem. Co. v. Fremont Gen. Corp.*,

6    148 Cal. App. 4th 97, 125 (2007) (holding that a business's net operating loss is the

7    proper subject of conversion because it is a definite, recordable amount).

8         Counter-Defendant alleges that Allen's conversion claim fails because (a) it falls

9    within the scope of the Copyright Act (Motion 7:7 - 8:8); (b) Allen fails to allege facts

10   establishing a partnership or joint venture (Motion 8:9 - 14:11); and (c) the Amended

11   Counterclaim fails to identify any "non-copyrightable assets." Having already argued

12   why the facts sufficiently allege a partnership, we focus our attention on the remaining

13   two arguments:

14             b.       Allen's Conversion Claim Does Not Fall Within The Scope of
                        The Copyright Act.
15

16        Counter-Defendant ignores the law. It is uncontroverted that an out-partners'

17   partnership claims under California state law contain several additional elements not

18   found in the Copyright Act. *Brown v. Snapchat, Inc.*, No. CV1308569RGKAGRX, 2014

19   WL 12573368, at *3 (C.D. Cal. Feb. 3, 2014). Specifically, "17 U.S.C. § 201(a) states

20   that 'authors of a joint work are coowners of copyright in the work.' A coowner of a

21   copyright has the exclusive rights to reproduce the work, prepare derivatives, distribute

22   copies, and perform/display the work. 17 U.S.C. § 106." *Id.* "If a person infringes the

23   rights of a copyright owner, the owner's remedies include 'actual damages and any

24   additional profits of the infringer . . . that are attributable to the infringement. 17 U.S.C. §

25   504(a)-(b)." *Id.*

26        "In contrast, a partner's default rights under California state law include equal

27   share in the profits and losses of the partnership and 'equal rights in the management

28   and conduct of the partnership business.' Cal. Corp. Code §16401." *Id.* "Additionally, '[a]

11

1  difference arising as to a matter in the ordinary course of business of a partnership may

2  be decided by a majority of the partners. An act outside the ordinary course of a

3  business of a partnership . . . may be undertaken only with the consent of all the

4  partners.'" *Id.* (citing to Cal. Corp. Code § 16401).

5          c.     Allen Sufficiently Alleges the Non-Copyrightable Asset
6                 Converted

7          "Because [] business assets and profits [are] the proper subject of a claim of

8  conversion, that property alone is sufficient to support" Allen's claim for conversion.

9  *Second Measure*, 143 F. Supp. 3d at 981; *see also* Cal. Corp. Code § 16807. "[Assets

10 and Profits are the] type of property that is the proper subject of a claim of conversion

11 because it is of ascertainable value." *Second Measure,* 143 F. Supp. 3d at 981.

12         In her Amended-Counterclaim, Allen alleges that she and Grasso "developed a

13 business together over and above the software product and related properties for which

14 there are copyright related claims." Amended Counterclaim ¶ 60. "Allen has an interest

15 in that business and its non-copyrightable assets," - i.e., to share in the profits and

16 losses of the business; to equally manage and conduct the business; to consent or

17 withhold her consent to acts arising in the course of business and to have that vote

18 respected by her partner, etc. *Id.* at ¶ 61.

19         If that was not specific enough, Allen goes on to specifically allege that Grasso

20 converted her interest to stock certificates and put them in his own name. "Shares of

21 stock are represented by certificates which are evidence of a definite interest in the

22 assets of a company. Shares of stock are tangible and may be identified. It is the

23 uniform rule of law that shares of stock in a company are subject to an action in

24 conversion." *Fremont Indem. Co.,* 148 Cal. App. 4th at 122. The Amended Counterclaim

25 alleges that Grasso spoke to investors and misrepresented that Grasso alone worked

26 on the project, formed Beautiful Slides, Inc. and put the corporation's stock in Grasso's

27 name; entered into agreements sharing ownership of the corporation with third party

28 investors; and excluded Allen from her share of an ownership interest and stock in the

1 corporation - all without Allen's consent. *Id.* at ¶¶ 62, 63.

2           d.    Counter-Defendants' Cases are in Accord, and Support the
3                 Court Denying the Motion to Dismiss.

4           Counter-Defendants rely on *Boon Rawd Trading Intern. Co., Ltd. v. Paleewong*

5 *Tranding Co., Inc.*, 688 F. Supp. 2d 940 (N.D. Cal. 2010), in which the court reached a

6 very narrow conclusion that despite the "shifting nature of conversion law" to

7 encompass "intangible property," the tort of conversion cannot be extended to

8 "customer goodwill." *Id.* at 955. Here, Allen does not allege the loss of customer

9 goodwill so the very narrow holding of that case is entirely irrelevant.

10    **D.    Allen's Breach of Implied Contract Cause of Action is Not Preempted
           and Is Adequately Pled**

11          Counter-Defendants allege that Allen's breach of implied contract claim fails

12 because it is preempted, and on the additional ground that Allen fails to allege conduct

13 giving rise to an implied contract, and fails to allege the terms, or a breach, of the

14 contract. Motion 15:23 – 17:18.

15          The same conduct from which a partnership may be inferred, thereby giving rise

16 to fiduciary duties, can be the subject of a breach of contract claim. California Civil Jury

17 Instruction 305 instructs,

18
19          Contracts can be created by the conduct of the parties, without spoken or
            written words. Contracts created by conduct are just as valid as contracts
20          formed with words. Conduct will create a contract if the conduct of both
            parties is intentional and each knows, or has reason to know, that the
21          other party will interpret the conduct as an agreement to enter into a
            contract.

22          As set forth above, the preemption argument fails. Allen's breach of implied

23 contract claim is not based solely on Grasso's registration of a copyright, nor is the

24 copyright the only asset of the Company. Corporate stock, business profits,

25 compensation are all rewards Allen was deprived resulting from Grasso's breach. *See*

26 *e.g.,* Amended Counterclaim ¶ 74(b). The claim is, thus, not pre-empted by the

27 Copyright Act which solely focuses on the authorship and use of the software alone.

28

13

1    Next, Counter-Defendants argue that Allen's allegation that she and Grasso

2  "agreed to form a new company" and "divided management and control" are

3  "conclusory." Motion 16:1-4. Setting aside whether they are "conclusory," these

4  allegations support an express contract. The allegations relevant in the breach of

5  implied contract setting are the *allegations of conduct* from which a jury may infer a

6  contract, which Counter Defendant's fail to reference.

7    Counter-Defendants argue Allen fails to allege conduct giving rise to an implied

8  contract, and fails to allege the terms, or a breach, of the contract. Motion 15:23 - 17:18.

9  The Amended Counterclaim alleges two plus years of conduct from which a [partnership

10  and] contract to work together, divide responsibilities and share equally in any resulting

11  benefits may be inferred. See e.g., Amended Counterclaim ¶ 68. It is difficult to imagine

12  a complaint that identifies more conduct and/or is more specific with respect to the

13  expectations of the parties.

14    Counter Defendants specifically argue that Allen's allegation that she "did all, or

15  substantially all, of the significant things that the contract required her to do, including

16  everything Grasso asked for her," are inadequate because she does not state what

17  requests Grasso made or why those "requests were 'significant' for the purposes of the

18  contract." Motion 16:20-24. Nothing in California law or Rule 8 requires specificity with

19  respect to every term and how it was performed. That said, the Amended Counterclaim

20  alleges a lot of what the parties asked of each other and the work that resulted.

21    Counter Defendants also argue that if Grasso's sole obligation was to "share

22  profits" with Allen, Allen's claim must fail for lack of a breach because the Company

23  "has not made a profit, and hence it would have been impossible for Grasso to 'share

24  profits'." Motion 17:9-10. But, that was not Grasso's sole obligation. His obligation was

25  to share with Allen all rewards from their efforts equally. He breached that agreement in

26  all kinds of ways, including hiding Allen's identity from potential investors, assigning

27  intellectual property to a corporation which he owned alone and taking all equity and

28  compensation for just him. Again, it's hard to imagine that there might be more detail

1  alleged in a breach of contract cause of action. In any event, the Court has already

2  rejected this argument. *See* Order 9, fn. 7.

3      Counter-Defendants finally argue the Amended Counterclaim is contradictory,

4  alleging the agreement was to share equally in the rewards and yet Allen complains

5  about not getting a job. Indeed, an owner can share equally in the rewards while also

6  taking a salary. Grasso himself got shares worth millions and now also takes a salary.

7  Allen was deprived of both equity and compensation, by contrast.

8      Counter-Defendants' reliance on *Landucci* is wholly misplaced. The sole issue in

9  that case was whether Plaintiffs' at-will employment turned into an implied contract for

10  permanent employment. *Landucci v. State Farm Insurance Company*, 65 F. Supp. 3d

11  694, 713-714 (N.D. Cal. 2014). The court there simply noted that an HR representative's

12  statement that Plaintiff would receive a pension if she were fired did not "constitute an

13  assurance that Plaintiff had a permanent employment contract. It is not a statement

14  concerning employment status at all, but rather pensions." *Id.* at 714.

15      The case is far more similar to *Second Measure, Inc.* and *Moreno v. SFX*

16  *Entertainment, Inc.*, which Counter-Defendants entirely ignore. *See e.g., Second*

17  *Measure*, 143 F. Supp. 3d at 978-979; *Moreno v. SFX Entertainment, Inc., No.* CV-14-

18  0880-RSWL-CWX, 2015 WL 4573226, at *4-6 (C.D. Cal. July 29, 2015) (e-mail

19  correspondence between "partners" where one partner makes statements like "for our

20  new company," signs his name as a "future (CEO/SFX Entertainment)", and where the

21  other partner "does not refute any of [those] statements about the creation of a new

22  company," "were sufficient to create a genuine dispute of material fact as to whether an

23  express [] partnership agreement was formed," and defeat a motion for summary

24  judgment).

25      **E.    Allen Has Pled Fraud with Particularity**

26      This is by far the most nonsensical of Counter-Defendants' arguments. Allen has

27  identified the date and content of every misrepresentation, and how she relied on it to

28  her detriment.

1

2    *1.    Fraud, Generally*

3    While generally fraud is predicated on an affirmative misrepresentation, under

4    California law, there are at least three ways to prove fraud by concealment. If there is a

5    fiduciary duty, concealment is actionable. Allen has alleged a partnership which gives

6    rise to a fiduciary duty and thus concealment is actionable based on those allegations.

7    But, even absent a partnership, Allen may prove concealment. If a party

8    discloses some facts but not all, or he is the only one who knows the material fact in

9    question, then concealment is actionable. Judicial Council of California Civil Jury

10   Instruction 1901.

11   *2.    Pleading Fraud Under Rule 9 Required Only the Date and Content
         of the Representation Where Known.*

12

13   Rule 9 under the Federal Rules of Civil Procedure does not demand a level of

14   factual detail equal to that expected at the time of trial. Rather, "Rule 9 . . . has been

15   interpreted to mean the pleader must state the time, place and specific content of the

16   false representations as well as the identities of the parties to the misrepresentation."

17   *Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-*

18   *Ford Corp.*, WDL Div., 661 F.2d 776, 782 (9th Cir. 1981).

19   In this instance, Allen expressly alleges the time, place, and nature of Grasso's

20   incomplete disclosures, which give rise to Allen's claim for concealment. *See e.g.,*

21   Amended Counterclaim ¶ 11 (on April 16, 2014, Grasso agreed to brainstorm with Allen

22   ideas for a new company, but failed to disclose that the company would be his alone

23   and/or that there was no partnership); ¶ 16 (when on June 4, 2014 Allen wrote to

24   Grasso that "[this is] really close to what we're doing, Grasso failed to correct Allen that

25   he alone was working on the idea and/or that her use of the word "we" was therefore

26   improper); ¶¶ 19, 20 (when on June 9, 2014, Allen and Grasso met at Starbucks and

27   Allen asked Grasso to memorialize their partnership in writing, Grasso simply said that a

28   writing was not required because the two were friends, but did not disclose that in fact,

     there was no partnership and/or that she was a mere employee); ¶ 32 (on July 7, 2016

---

16

and August 3, 2016, Grasso pressed Allen to confirm her time commitment to the business, but again failed to mention that Allen was not his partner); ¶ 34  (in June 2016, Grasso wrote to Allen saying "we could raise $$ in 1.3 secs easy," adding, "i have a feeling the valuation won't differ that much across VCs but if we can pick who we work with that'd be nice," without disclosing to Allen that his reference to "we" meant anything other than partners or that he would cut her out of the money he was referencing); On July 8, 2016, Grasso asked Allen "what we collectively feel is missing from the current build in order to feel good about showing it off," again without disclosing that he was diminishing Allen's role to anything but an equal partners); ¶ 36 (significantly, when on August 11, 2016, Allen proposed introducing Grasso as her partner to one of her investor contacts, Grasso did not object. To the contrary, he revised Allen's email to say "[Grasso] and I are working on a new startup in the presentation space," without disclosing to Allen that he intended to cut her out of the startup, or that he actually meant that he was her boss and she, his employee). These allegations are more than sufficient under Rule 9 and Counter-Defendants' argument that Grasso's deceitful, 2.5-year long collaboration is not actionable is unfounded.

Counter-Defendants' reliance on *Mohebbi* and *Doll* do not change the analysis. In *Mohebbi*, Plaintiff identified certain paragraphs as setting forth the time, place and nature of defendants' misrepresentations, but the court noted "these paragraphs do not in fact include any such information." *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1256 (N.D. Cal. 2014). Here, Allen has included the date and content that in *Mohebbi* the Court found was missing. *Doll* is entirely inapplicable as the court in that case refused to address the adequacy of plaintiff's state law claims, including fraud, for lack of jurisdiction. *Doll v. Stars Holding Co.*, No. C-05-1132, 2005 WL 2811767, *2 (N.D. Cal. Oct. 27, 2005).

### 3.   *Allegation of Intent Do Not Have To Be Pled With Specificity*

To the extent Grasso argues that the issue of intent was not pled with the requisite specificity under Rule 9, it did not have to be. *See e.g.,* Motion 19:1- 20:2.

1  "Under Rule 9(b), '[m]alice, intent, knowledge, and other conditions of a person's mind

2  may be alleged generally.'" *Roberts v. Gainsforth*, No. CV1407595ABVBKX, 2015 WL

3  12765021, at *9 (C.D. Cal. Apr. 28, 2015).

4          *4.    Allen Has Alleged Justifiable Reliance*

5        Finally, Counter-Defendants' suggestion that Allen has filed to allege justifiable

6  reliance is laughable. The Amended Counterclaim routinely alleges how Allen relied on

7  Grasso's comments in expending more time and effort on the project. *See e.g.,*

8  Amended Counterclaim ¶ 20 (Allen "relied on this discussion, and Grasso's

9  representations, in continuing to do work as a partner in the partnership with

10  expectations of sharing profits"), see also *Id.* ¶¶ 15, 18, 26, 81(d). Had Grasso disclosed

11  to Allen that she was not a partner and/or that he intended to cut her out of the

12  business, Allen would not have taken any of the above actions. She would have

13  behaved differently - i.e., she would have demanded a partnership agreement in writing

14  as early as June 8, 2014 (*see e.g.,* Amended Counterclaim ¶¶ 19, 20); and/or she would

15  have backed out of the partnership and worked on developing her own software

16  separate and apart from Grasso.

17  **IV.   CONCLUSION**

18        For the foregoing reasons, Allen respectfully requests that the Court DENY

19  Counter-Defendants' Motion in whole, or otherwise allow Allen to amend her

20  counterclaims to allege additional facts, if required by the Court.

21

22  Dated: October 16, 2017             WOOD ROBBINS, LLP

23

24

25                    By:_____

26                     Gregory Wood
                   Attorneys for Defendant and
                   Counterclaimant MAY ALLEN

27

28