

Bill Frimel
1075 Curtis Street
Menlo Park, CA 94025
Tele: (650) 322-3048
bill@sffwlaw.com

December 8, 2017

Hon. Laurel Beeler
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom C, 15th Floor
450 Golden Gate Ave., San Francisco, CA  94102

Re:   *Beautiful Slides, Inc. v. Allen,*  Case No. 3:17-cv-01091-MMC

Your Honor:

Pursuant to Section III.4 of the Court's Standing Order, the parties to this action respectfully submit this letter brief regarding the discovery disputes between the parties.

**Discovery Issues Raised by Plaintiffs (As Recounted by Plaintiffs)**

**I.    Interrogatories Nos. 1 & 3**

**A.    Statement of Unresolved Issue According to Plaintiffs:**  Plaintiffs Beautiful Slides, Inc.'s and Mitch Grasso's ("Plaintiffs") Interrogatory No. 1 requests that Defendant and Counterclaimant May Allen "Identify Any features of the Software created by You, whether those features were incorporated into the current version of the Software or any prior one."[1] Interrogatory No. 3 requests that Allen "Identify Any features You identified in response to Interrogatory No. 1 that are incorporated into the current version of the Software."  (Exh. B, at 3-5.)  Allen answered by stating that "Allen and Grasso were partners and together they created and developed the Software," and listing a series of "design elements, or features, the partnership created."  (*Id.*)  Plaintiffs contend that this answer is unresponsive and must be supplemented.

**B.    Summary of Each Party's Position**

**Plaintiffs:**  Interrogatory No. 1 asks Allen to identify features of the Software "created by You," which Plaintiffs define to mean Allen (Exh. A, at 2) — not by "the partnership."  This distinction is important because Allen claims to have "created independently copyrightable drawings, art, text, and designs that were then incorporated by Grasso, into the" Software, and that the Software is therefore a joint work by Grasso and Allen for copyright purposes.  (Allen's Am. Countercl., Dkt. No. 37, Sept. 18, 2017 ("ACC"), ¶ 91.)  Based on the parties' discussions,

---

[1] The "Software" means "the software application known as Beautiful Slides."  (Exh. A, at 2.)

Hon. Laurel Beeler
December 8, 2017
Page 2

Allen's position appears to be that, as 17 U.S.C. § 101 provides that "[a] work is 'created' when it is fixed in a copy or phonorecord for the first time," and some of Allen's counterclaims arise under the Copyright Act, Allen reasonably assumed Plaintiffs intended the word "created" in Interrogatories Nos. 1 and 3 to have the meaning given that term in Section 101 and answered accordingly.  As Section 101 refers to the "creation" of a work rather than its individual features, and Allen says "the partnership" "created" the Software, Allen's argument goes, it was proper to answer that "the partnership," rather than Allen or Grasso, "created" features of the Software.

However, as noted above, Allen's own pleading says Allen "*created* . . . drawings, art, text," and so forth "that were then incorporated by Grasso[] into" the Software (ACC ¶ 91 (emphasis added)) — referring to components or features of the Software, not the Software as a whole.  It is improper for Allen to use "created" in the commonly understood, rather than the statutory, sense in the ACC, and later contend she is not required to answer interrogatories using the commonly accepted definition.  Further, Allen's contention that "the partnership" "created" the listed features contradicts the ACC, as the ACC alleges *Allen* "created" a series of components or features.  (*Id.*)  Thus, Allen should be directed to supplement these Interrogatory responses to specify which features of the Software Allen, not "the partnership," allegedly created.

**Defendant:** These Interrogatories call for the identification of features in the Software at issue that were, in part or in total created by Defendant May Allen ("Allen"). Allen identified the features that she aided in the creation, either in part or in total. As such Allen is a "joint author," under copyright law and the Partnership (Allen and Grasso) is the owner of that copyright.

During the in-person meet and confer, Plaintiff objected to Allen's use of the word "partnership" in Allen's responses. Allen agreed to change the subject of these sentences from the "partnership" as creator/developer of the features to, "May Allen as joint author" of the software features at issue. This satisfied Plaintiffs for Special Interrogatory No. 2. Allen offered this same compromise to apply to Special Interrogatories Nos. 1 and 3. Plaintiffs declined.

Plaintiffs then shifted the argument, complaining that Allen's response were not "specific" enough. But responses to special interrogatories need not be that granular. Allen's descriptions of the software allows Plaintiffs to know, generally, what elements of the software are at issue in the litigation, and to aid his attorneys in defending his rights. Further, the descriptions are sufficient to permit Plaintiffs to intelligently conduct further discovery, including a deposition of Ms. Allen on the issue. No additional specificity is required.

C.   **Final Proposed Compromises**

**Plaintiffs:**  Plaintiffs would accept a response to these Interrogatories that (1) listed the features that Allen, as opposed to "the partnership," "contributed to," and (2) provided further specificity regarding the nature of the features to which Allen contributed.

**Defendant:** Allen has already offered to strike the "partnership" language and replace it with references to May Allen's "joint authorship." Further specificity as to the features, however, is not required for code compliant responses.

Hon. Laurel Beeler
December 8, 2017
Page 3

## II. Interrogatory No. 13

**A.    Statement of Unresolved Issue According to Plaintiffs:**  This Interrogatory requests that Allen "Identify the date when You contend that Grasso formed the 'intention[] to cut [You] out of any meaningful profit from the development of the new software known as Beautiful Slides,' as stated in Paragraph 53 of the Counterclaim." (Exh. B, at 23.)  Allen answered that, while "Allen does not know when Grasso first formed the 'intention[] to cut [You] out of any meaningful profit . . .,' Grasso may have always intended to keep the value of Beautiful Slides for himself," but, "when Grasso's conversations with potential investors went very well in approximately August 2016, Allen alleges on information and belief that, if Grasso did not always intend to keep the value of Beautiful Slides for himself, Grasso changed his mind at that point." (*Id.*)  Plaintiffs contend that this answer's language "Grasso may have always intended to keep the value of Beautiful Slides for himself," but, "when Grasso's conversations with potential investors went very well in approximately August 2016, Allen alleges on information and belief that, if Grasso did not always intend to keep the value of Beautiful Slides for himself, Grasso changed his mind at that point" (the "Disputed Language") is unresponsive and improper.

**B.    Summary of Each Party's Position**

**Plaintiffs:**  This Interrogatory asked Defendant when she contends Grasso formed the intent to "cut her out of any meaningful profit" from the Software — not when she claims Grasso "may have" done so.  Further, the Disputed Language's reliance on "information and belief" is improper, as Defendant must base her responses on personal knowledge.  *See, e.g., U.S. v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) ("Since [plaintiff] swore to her [interrogatory] answers, in part, based on information and belief rather than her personal knowledge, she did not comply with Rule 33.").  If Defendant does not know when Grasso allegedly formed the intent to "cut her out," Defendant must state as much without speculation.

**Defendant:** Allen responds to this Interrogatory by clearly stating that she "does not know when Grasso first formed the intention to cut [her] out of any meaningful profit from . . . [the] Beautiful slides" software. This is a sufficient response to allow Plaintiff (1) know Allen's position in litigation, (2) know Allen's state of knowledge about Grasso, and (3) to use this verified response against Allen in deposition or at trial. The response is complete.

Plaintiffs complain, however, because Allen goes on to give *additional information*. Of course it is impossible for, Allen to know with precision what Grasso was thinking. As the Courts have noted, this is a perennial problem in fraud cases: "because the real intent of the parties and the facts of a fraudulent transaction are peculiarly in the knowledge of those sought to be charged with fraud, proof indicative of fraud may come by inference from circumstances surrounding the transaction . . . ." *Miller v. Nat'l Am. Life Ins. Co.*, 54 Cal. App. 3d 331, 338-39 (1976) (internal quotation marks omitted). Accordingly, Allen has done what she could to offer to Plaintiffs her contentions as to what the circumstances may show about Grasso's state of mind. Thus Allen discusses what she believes Grasso "may" have been thinking and what Grasso might have intended in the course of deceiving her. With this disclosure, Plaintiffs cannot argue later that they were not put on notice as to what Allen would contend at trial. Plaintiffs are not prejudiced

Hon. Laurel Beeler
December 8, 2017
Page 4

by knowing more about Allen's contentions, knowing more about Allen's theories of the case, or being put on notice as to what Allen believes the facts may eventually show.

**C.      Final Proposed Compromises**

**Plaintiffs:**  Plaintiffs would accept an answer to this Interrogatory that simply removed the Disputed Language.

**Defendant:** Allen declines to remove information in the discovery response, only to be accused later of not putting Plaintiffs on notice of her theories and contentions.

**Request for Production of Documents No. 14**

**A.      Statement of Unresolved Issue According to Plaintiffs:**  This Request seeks "Documents sufficient to identify the monetary compensation You received from All persons and entities for which You performed work between January 1, 2013 and the present." (Exh. C, at 8.)  Allen objected that this Request is irrelevant and violates her right of privacy, and declined to produce responsive documents. (*Id.*)  Plaintiffs contend these objections are without merit.

**B.      Summary of Each Party's Position**

**Plaintiffs:**  Allen claims to have done "hundreds of hours of work for no compensation" (ACC ¶ 50(b)) between 2014 and 2016 (*id.* ¶¶ 11-48, 68(e)), although she "did not keep time records" reflecting that supposed fact (Exh. B, at 23).  Allen further claims Plaintiffs deprived her of "compensation that would have gone to her as a cofounder and venture partner" of Beautiful Slides, Inc. (the "Company"). (ACC ¶ 9.)  Thus, Allen's compensation from other sources during the relevant period bears on the credibility of her claims to have done "hundreds of hours of work" relating to the Software, and shared "management and control" of the Company with Grasso.  (*Id.* ¶ 50(a) & (b).)  For instance, if Allen (who was employed full-time by Projector, Inc., a third party, during 2016 (*id.* ¶ 29)), (a) received a bonus from her employer based on performance or an unusual number of hours worked and/or (b) provided services to other third parties while purportedly working full time in addition to the "hundreds of hours" for the Company, that would undermine her claim to have made a contribution to the Software equal to Grasso's.  Such information is also relevant to whether and to what extent Allen mitigated her purported damages.  Moreover, Plaintiffs have agreed that, regardless of the nature of the protective order the Court may enter, any documents produced by Allen will be used only for the purposes of this litigation.  Thus, Allen cannot block Plaintiffs' access to this information on privacy grounds.  *See, e.g., Bird v. PSC Holdings I, LLC*, No. 12–CV–1528, 2013 WL 1120659, *2-3 (S.D. Cal. Mar. 18, 2013) (despite privacy objection, employment plaintiff ordered to respond to interrogatory asking her to describe "all efforts YOU have made since January 2008 to obtain employment," because, *inter alia*, "the information sought in these demands is necessary to ascertain whether Plaintiff mitigated her damages").

**Defendant:** Under the California Constitution all people have certain "inalienable rights," and among these is "pursuing and obtaining . . . privacy." Cal. Const. Art. I, § 1. "The right of privacy protects against the unwarranted, compelled disclosure of private or personal information

Hon. Laurel Beeler
December 8, 2017
Page 5

and "extends to one's confidential financial affairs . . . ." *SCC Acquisitions, Inc. v. Superior Court*, 243 Cal. App. 4th 741, 754–55 (2015); *see Harris v. Superior Court*, 3 Cal. App. 4th 661, 664 (1992) ("Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution."). "This right embraces confidential financial information in "whatever form it takes, whether that form be tax returns, checks, statements, or other account information." *Overstock.Com, Inc. v. Goldman Sachs Grp., Inc.*, 231 Cal. App. 4th 471, 503 (2014). In analyzing the right to privacy, *"*the court must balance the privacy interest at stake against other competing or countervailing interests." *Puerto v. Superior Court*, 158 Cal. App. 4th 1242, 1251 (2008); *see Pioneer Electronics (USA), Inc.*, 40 Cal. 4th at 371 (holding that "privacy interest[s] . . . must be measured against other competing or countervailing interests in a 'balancing test'"); *see also Britt v. Superior Court*, 20 Cal. 3d 844, 855–56 (1978).

Here, the sought after evidence—of "monetary compensation"—would not offer direct evidence touching on an issue in this case and for that reason the analysis weighs against disclosure. Plaintiffs argue that the evidence of Allen's "monetary compensation" from "other sources during the relevant period bears on the credibility of [Allens'] claims to have done 'hundreds of hours of work' relating to the Software." While issues of credibility are, generally speaking, in the background of every case, they are not, strictly speaking evidence that goes to prove or disprove a specific element of the case. More significantly, because Allen is salaried, the amount of money that Allen made, *i.e.*, her "monetary compensation" cannot prove the prove the number of hours Allen worked, the thing Plaintiffs argue they are trying to impeach Allen about.

Plaintiffs then argue that evidence of "monetary compensation" is "relevant to whether and to what extent Allen mitigated her purported damages." But this is not an employment law case where evidence of employment elsewhere might mitigate labor law damages against the defendant employer. The fact that Allen happened to work for other companies, does not offset the loss caused by Grasso in denying her rightful share of the Beautiful Slides partnership, or her interest as a joint author in the Beautiful Slides software. Absent Grasso's malfeasance, Allen would have enjoyed *both* benefits—her interest in the Beautiful Slides partnership on the one hand, and her salaried revenue from other employers on the other. As a final, if not dispositive note, Allen has no legal damages currently left in this action. Allen's partnership and fraud claims were dismissed by Judge Chesney a few weeks ago. Allen's only surviving claims are for declaratory relief. The issue of Allen mitigating damages is a non-issue because there are no such damages to mitigate.

### C.   Final Proposed Compromises

**Plaintiffs:**  Plaintiffs would accept a limitation of this Request to encompass only records dating from January 1, 2014 to the present.

**Defendant:**  The documents at issue are protected by Allen's constitutional right to privacy. No countervailing interest outweighs that right. No production should be ordered.

The parties certify that they conferred in person and were unable to resolve the foregoing issues.

Hon. Laurel Beeler
December 8, 2017
Page 6



Bill Frimel
Counsel for Plaintiffs and Counterclaim-Defendants

*/s/ Douglas Robbins*

B. Douglas Robbins
Counsel for Defendant and Counterclaimant